UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Leroy R. Montgomery,** | ) | **Civil Action No.:_____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Equifax Information Services, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.      This is an action brought by Plaintiff, Leroy R. Montgomery, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Leroy R. Montgomery, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company

2

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.     Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.     Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.     Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

14.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, failed to reinvestigate Plaintiff's disputes, and failed to block fraudulent information from Plaintiff's credit report after receipt of a police report. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

## FACTUAL ALLEGATIONS

15. On December 15, 2022, Plaintiff went to his bank, Palmetto First Federal Credit Union, to find out his credit score. On occasion, Plaintiff would go to his bank for the sole purpose of checking his credit score as he was trying to improve his credit in order to be in a position to buy a home. The bank representative informed Plaintiff his credit score had dropped tremendously and asked if he had taken out any credit cards. Plaintiff was shocked to hear this information because he did not use, own, nor had he ever even applied for a credit card.

16. The Palmetto First Federal Credit Union Infile Credit Report dated December 15, 2022, showed Plaintiff's Equifax credit score as 573. The Infile Credit Report also showed a derogatory Cap One Account reporting as 120 days past due, and a First Premier Account reporting as a charge-off.

17. At a loss as to how negative items were reporting on his credit reports, Plaintiff obtained a copy of one of his credit reports and discovered that three credit cards were reporting negatively – credit cards for which he never applied.

18. On or about February 1, 2023, Plaintiff called the Consumer Financial Protection Bureau ("CFPB") to report the inaccurate accounts reporting on his credit reports. Thereafter, on February 2, 2023, the CFPB sent Plaintiff a letter stating that he would need to either file a complaint online or by phone. Included with the letter was a form complaint which Plaintiff completed and returned to the CFPB.

19. On or about March 10, 2023, Fairway Independent Mortgage Corporation sent a letter to Plaintiff stating his mortgage loan application was denied based on the number of

recent inquiries on his consumer report.

20.     On April 4, 2023, Plaintiff filed a police report with the Florence County Sheriff's Office concerning credit cards that had been taken out in his name for which he did not apply.

21.     On or about February 8, 2024, Plaintiff obtained a copy of his Equifax credit report which showed a Capital One Bank account reporting as a charged off account with a balance due of $1,107. This report also showed inquires by Capital One Bank USA, JPMCB - Card Service and First Phase Visa.

22.     On or about February 27, 2024, Plaintiff sent a dispute letter to Defendant ("First Dispute Letter") stating that in April 2023 he had discovered fraudulent accounts had been opened in his name without his knowledge or permission. Specifically, Plaintiff disputed: Capital One Bank, account ending 3560. In addition, Plaintiff disputed the hard inquiries for First Phase Visa, JPMCB-Card Services, and Capital One Bank USA NA. Plaintiff requested Defendant remove these items so his credit report would be correct. Plaintiff provided Defendant his Social Security number, his date of birth, and his address in his letter.

23.     Defendant received Plaintiff's First Dispute on March 10, 2024.

24.     On or about March 12, 2024, Defendant sent a letter to Plaintiff stating it was unable to locate a credit file in its database with the identification information Plaintiff provided and stated it would need additional documents verifying his identification in order to further assist him.

25.     On March 19, 2024, Plaintiff mailed to Defendant, via certified mail, a copy of his

Driver's License, and Social Security card as requested by Defendant in its March 12, 2024, letter.

26.  On or about March 22, 2024, Defendant sent Plaintiff a letter including a copy of "Remedying the Effects of Identity Theft," prepared by the Consumer Financial Protection Bureau.

27.  On April 2, 2024, Defendant received Plaintiff's documentation verifying his identify and current address.

28.  On or about April 4, 2024, Defendant sent Plaintiff the exact same letter stating it was unable to locate a credit file in its database with the identification information Plaintiff provided and stating it would need additional documents verifying his identification in order to further assist him. The additional documents requested were the same documents Plaintiff had already provided to Defendant on March 19, 2024.

29.  Desperate to get his Equifax credit report corrected, on April 18, 2024, Plaintiff again mailed to Defendant, via certified mail, a copy of his Driver's License and Social Security card as requested by Defendant in its April 4, 2024, letter.

30.  On or about April 28, 2024, Defendant sent Plaintiff a second letter including a copy of "Remedying the Effects of Identity Theft," prepared by the Consumer Financial Protection Bureau.

31.  On that same day, Defendant sent Plaintiff stating a letter stating it had received his request concerning inaccurate information on his Equifax credit file, but the identifying documentation Defendant had received from Plaintiff did not match the information it currently had on his credit file. Equifax again asked Plaintiff to send documentation

6

verifying his identity and current address.

32. Also on April 28, 2024, Defendant sent a third letter to Plaintiff stating it had received his recent dispute correspondence regarding the Capital One Bank USA NA *3560 account. Defendant stated that it was currently processing Plaintiff's previously submitted dispute for the Capital One account and that it would not be conducting any further investigation into that particular account.

33. On or about May 9, 2024, Defendant sent Plaintiff a third letter including a copy of "Remedying the Effects of Identity Theft," prepared by the Consumer Financial Protection Bureau.

34. On May 9, 2024, Plaintiff mailed to Defendant, via certified mail, a copy of his Driver's License, Social Security card, and most recent dispute letter as requested by Defendant in its April 28, 2024, letter.

35. On or about May 9, 2024, Defendant sent Plaintiff a fourth letter including a copy of "Remedying the Effects of Identity Theft," prepared by the Consumer Financial Protection Bureau.

36. Defendant received Plaintiff's documentation verifying his identify and current address on May 15, 2024.

37. On May 16, 2024, Defendant sent Plaintiff a letter stating that, in order to process Plaintiff's request, it must receive valid and legible documentation. Defendant claimed the identification documents Plaintiff sent to Defendant were illegible and requested Plaintiff send legible copies of his documentation verifying his identity and current address.

38. On or about May 29, 2024, Defendant sent Plaintiff a fifth letter including a copy

7

of "Remedying the Effects of Identity Theft," prepared by the Consumer Financial Protection Bureau.

39.     On June 10, 2024, Plaintiff mailed to Defendant, via certified mail, a copy of Defendant's May 16, 2024, letter, his Driver's License and Social Security card, and his February 27, 2024, dispute letter.

40.     On or about June 11, 2024, Defendant sent Plaintiff a sixth letter including a copy of "Remedying the Effects of Identity Theft," prepared by the Consumer Financial Protection Bureau.

41.     On June 14, 2024, Defendant received Plaintiff's documentation verifying his identify and current address.

42.     On or about June 16, 2024, Defendant sent a letter to Plaintiff stating that, in order to process Plaintiff's request, it must receive valid and legible documentation. Defendant again claimed the identification documents Plaintiff sent to Defendant were illegible and requested Plaintiff send legible copies of his documentation verifying his identity and current address.  Defendant also stated that the information Plaintiff provided did not match the information it currently had on Plaintiff's credit file.

43.     On or about June 25, 2024, Defendant sent Plaintiff a seventh letter including a copy of "Remedying the Effects of Identity Theft," prepared by the Consumer Financial Protection Bureau.

44.     On or about July 4, 2024, Defendant sent Plaintiff a letter stating that, as a result of a dispute he submitted regarding Capital One Bank USA NA account 3560, the account had been removed from his Equifax credit file.  However, Capital One Bank USA NA had

recently requested to have the account information reinserted on Plaintiff's Equifax credit file and submitted a certification that the account belonged to Plaintiff and the information reporting was complete and accurate. As a result, Defendant reinserted the Capital One Bank USA NA account back onto Plaintiff's Equifax credit report as belonging to Plaintiff.

45. Prior to its July 4, 2024, letter, Defendant had never notified Plaintiff that the fraudulent Capital One Bank account had ever been removed from Plaintiff's Equifax credit file.

46. Prior to its July 4, 2024, letter, Defendant had never provided Plaintiff any results of its alleged investigation into Plaintiff's disputes.

47. At the time Defendant sent the July 4, 2024, letter, Defendant did not provide Plaintiff a copy of his updated credit report.

48. On or about August 22, 2024, Plaintiff sent a second dispute letter to Defendant ("Second Dispute Letter") wherein Plaintiff stated he had not received a response from Defendant to his previous dispute letter other than Defendant sending multiple letters requesting proof of his identity and address. Plaintiff stated he had mailed Defendant a copy of his Driver's License and Social Security card on March 19, 2024, April 18, 2024, May 9, 2024, and June 10, 2024. Plaintiff also stated he had recently received another letter from Defendant dated June 16, 2024, requesting the same identifying documentation from Plaintiff. Plaintiff again disputed the Capital One Bank account ending 3560 as an account fraudulently opened in his name without his knowledge or permission. Plaintiff requested Defendant remove the fraudulent account from his Equifax credit file. Plaintiff also requested the hard inquiries for First Phase Visa, JPMCB-Card Services, and Capital

One Bank USA NA be removed as he did not apply for those accounts nor did he authorize those inquiries. Plaintiff requested Defendant fix his credit report so it would be correct. Finally, despite having provided it four times prior, Plaintiff again provided a copy of his Social Security card and Driver's License to Defendant.

49. Defendant received Plaintiff's dispute and supporting documentation on August 27, 2024.

50. Unbelievably, on or about September 2, 2024, Defendant sent Plaintiff a letter stating that the information Plaintiff provided as proof of his identity did not match the information Defendant had on Plaintiff's credit file. Accordingly, Defendant informed Plaintiff that he needed to send in two different items in order for Defendant to be able to verify his identity and verify his address.

51. On or about September 3, 2024, Defendant sent Plaintiff an eighth letter including a copy of "Remedying the Effects of Identity Theft," prepared by the Consumer Financial Protection Bureau.

52. Completely frustrated by Defendant's ongoing refusal to investigate his disputes and correct his credit report, Plaintiff sent a third dispute letter to Defendant ("Third Dispute Letter") on or about September 24, 2024. In this letter, Plaintiff stated he had not received a response from Defendant to his previous dispute letter, and that the only letters he had received from Defendant were to request proof of his identity and address. Plaintiff again disputed the Capital One Bank account ending 3560 as an account fraudulently opened in his name without his knowledge or permission, and requested Defendant remove it from his credit file. Plaintiff also requested the hard inquiries for First Phase Visa, JPMCB-Card

Services, and Capital One Bank USA NA be deleted as Plaintiff did not authorize them. With his letter, Plaintiff included a copy of his August 22, 2024, dispute letter, a copy of Defendant's September 2, 2024, letter requesting identifying documentation, a copy of his Driver's License, a copy of his Social Security card, and a copy of the police report he filed with the Florence County Sheriff's Office on April 4, 2023.

53.     Defendant received Plaintiff's Third Dispute and supporting documentation on October 1, 2024.

54.     On or about October 1, 2024, Defendant sent Plaintiff a letter stating it had received his request to block certain information from his Equifax credit file, but Defendant refused to do so. Defendant informed Plaintiff that in order for Defendant to block information under Section 605 of the FCRA, Plaintiff needed to provide proof of his identity, the specific information that was the result of identity theft, and a copy of an FTC Identity Theft Report with the Federal Trade Commission or a police report regarding the identity theft.

55.     At the time Defendant sent the October 1, 2024, letter refusing to block the fraudulent information, Defendant had previously received proof of Plaintiff's identity on at least six occasions. Defendant had also previously received three dispute letters from Plaintiff setting out the specific information that was the result of identity theft. Finally, Defendant received a copy of Plaintiff's police report regarding the identity theft.

56.     On October 1, 2024, Defendant sent a second letter to Plaintiff stating that the identifying documents he had provided Defendant as proof of his identity and current address were illegible. As a result, Plaintiff was again instructed to send documentation

verifying his identity and current address. Additionally, Defendant informed Plaintiff that the information he provided as proof of his identity did not match the information currently in Plaintiff's credit file.

57. On or about October 2, 2024, Defendant sent Plaintiff a nineth copy of "Remedying the Effects of Identity Theft," prepared by the Consumer Financial Protection Bureau.

58. To date, Defendant continues to refuse to remove the fraudulent Capital One Bank account from Plaintiff's Equifax credit file and continues to incorrectly report the account as belonging to Plaintiff.

59. To date, Defendant also continues to report at least three fraudulent hard inquiries as being authorized by Plaintiff.

60. Defendant never conducted a reasonable reinvestigation of Plaintiff's disputes.

61. Defendant wrongfully reinserted the fraudulent Capital One Bank account on to Plaintiff's Equifax credit report.

62. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

63. The Plaintiff adopts the averments and allegations of paragraphs 15 through 62 hereinbefore as if fully set forth herein.

64. Defendant maintains and distributes credit data files on the Plaintiff's credit.

Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

65. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

66. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to fix his Equifax credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses.

67. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

68. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

69. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

70. The Plaintiff adopts the averments and allegations of paragraphs 15 through 69 hereinbefore as if fully set forth herein.

71. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

72. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

73. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

74. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to correct his Equifax credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses.

75. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

76. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

77. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

78.     Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.    For such other and further relief as the Court may deem just and proper

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
508 Meeting Street
West Columbia, SC 29169